## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                    **INDICTMENT**

**EUGENE TELFAIR**
**and**                                                   4:10cr50 - RH
**ROBERT NIXON**

_____/

**THE GRAND JURY CHARGES:**

### COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment unless otherwise specified:

1.      The United States Department of Housing and Urban Development (HUD) was an agency of the United States which, under the Historically Black Colleges and Universities Program, provided funds in the form of grants to historically black colleges and universities to address community development needs in their localities.

2.      The purpose of the Historically Black Colleges and Universities Program was to enable historically black colleges and universities to expand their role and effectiveness in helping their communities with neighborhood revitalization, housing, and economic development principally for persons of low and moderate income.

3.      The Florida Agricultural and Mechanical University (FAMU) was an organization, receiving, in a one-year period, benefits in excess of $10,000 under a Federal program involving grants, contracts, subsidies, loans, guarantees, and other forms of Federal assistance, including, but not limited to,  grant monies under the Historically Black Colleges and Universities Program.

4.      The FAMU Institute on Urban Policy and Commerce (the Institute) was commissioned by the Florida State Legislature to develop comprehensive urban strategies and partnerships to address social, economic, and physical issues through applied research and training.

5.      Between in or about 2002  and in or about  2004, FAMU  received approximately $596,684.47 in HUD grant funds, which were obtained based upon the representation, among others, that a portion of these funds would be used to fund a "Micro-Loan Program" to be operated by the Institute.

6.      Between in or about 2002 and in or about 2008, the Institute offered micro-loans in  amounts ranging from $3,000 to $15,000 to qualified owners of small businesses to be used for business-related expenses.

7.      EUGENE TELFAIR was the president of FAMU Federal Credit Union (FAMU FCU) and operated as an agent of FAMU with respect to the administration of the Micro-Loan Program and distribution of micro-loans pursuant to that program.

8.      Between in or about March 1990 and in or about May 2005, P.W. served as Director of the Institute, whose responsibilities included oversight of the Micro-Loan Program.

9.      On or about January 18, 2002, Account Number xx478 ("CCEDI account") was opened at FAMU FCU in the name of "CCEDI - FAMU Urban Policy Grant," with EUGENE TELFAIR and P.W. listed as authorized signators on the account.

10.     In or about May 2005, ROBERT NIXON replaced P.W. as Director of the Institute. He was added as a signator to the CCEDI account on or about June 26, 2008.

11.     Between in or about 2002, and in or about 2008, approximately $324,900 in funds belonging to FAMU were deposited into the CCEDI account.

12.     Between in or about 2002, and in or about 2004, approximately $32,800 was transferred from the CCEDI account to EUGENE TELFAIR.

13.     Between in or about May 2002 and in or about November 2008, micro-loans totaling approximately $202,000 were made to borrowers under the Micro-Loan Program. The loan checks were drawn on FAMU FCU AccountNumber xxxxx9999, and the micro-loans were secured by grant funds in the CCEDI account.

14.     When certain micro-loans went into default, funds in the CCEDI account were liquidated and used to pay off the balance of these loans.

15.     On or about May 31, 2008, the CCEDI account had a balance of approximately $201,715.

## B. THE CONSPIRACY

Between in or about 2005 and on or about the date of the return of this Indictment, in the Northern District of Florida, and elsewhere, the defendants,

**EUGENE TELFAIR**
**and**
**ROBERT NIXON,**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons to commit offenses against the United States, namely:

(1) to knowingly embezzle, steal, obtain by fraud, intentionally misapply, and without authority convert to the use of a person other than the rightful owner, property valued at $5,000 or more, and under the care, custody and control of an organization, State, and agency, having been agents of said organization, State, and agency, which received in a one year period benefits in excess of $10,000 under a Federal program involving a grant and other forms of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(A); and

(2) to devise and attempt to devise a scheme to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme to cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, and signals, in violation of Title 18, United States Code, Section 1343.

## C. MANNER AND MEANS

It was part of this conspiracy that:

1.      Defendants would and did use their positions at the FAMU and FAMU FCU to embezzle and misapply approximately $134,253 from the CCEDI account, and to convert these funds to their own uses and to the use of others not entitled thereto.

2.      Defendants would and did create false, fraudulent, and misleading consulting contracts, personal services agreements, and other documents in an attempt to legitimize their taking of approximately $134,253 in federal grant funds from the CCEDI account.

3.      Defendants would and did cause to be created false and fraudulent Internal Revenue Service Forms 1099 to create the impression that the money they took from the CCEDI account was legitimate income.

4.      Defendants would and did fraudulently attempt to legitimize their taking of these funds by writing checks to one another from the CCEDI account and characterizing these payments as consulting and administrative fees, when in truth and fact, and as the defendants then well knew, they had not performed administrative and consulting services that would entitle them to payment of $134,253 in federal grant funds from the CCEDI account.

5.      It was further a part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

## D.  OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, in the Northern District of Florida and elsewhere, defendants did commit and cause to be committed the following overt acts, among others:

1.  On or about June 26, 2008, ROBERT NIXON signed a signature card making him an authorized signator on the CCEDI account.

2.  On or about June 26, 2008, ROBERT NIXON wrote a check on the CCEDI account payable to EUGENE TELFAIR in the approximate amount of $10,085.75.

3.  On or about July 24, 2008, ROBERT NIXON wrote a check on the CCEDI account payable to EUGENE TELFAIR in the approximate amount of $4,034.

4.  Between in or about 2008 and in or about June 2009, EUGENE TELFAIR and ROBERT NIXON executed a "Personal Services Agreement," dated November 3, 2008, stating that ROBERT NIXON agreed "to work in conjunction with Gene Telfair to monitor existing program(s), develop new program(s), provide technical support and perform program assessments."

5.  Between in or about 2008 and in or about June 2009, EUGENE TELFAIR and ROBERT NIXON signed a document entitled "Addendum" that named themselves as "Contract Administrators," and provided that: EUGENE TELFAIR and ROBERT NIXON would be "responsible for the day-to-day administration of the Micro-Loan

Program as Independent Contractors" and that "[u]pon completion of the program the Plan Administrators are eligible to collect administrative fees from the balance remaining less any loan offsets; these funds are to be disbursed equally among the Plan Administrators."

6.  On or about December 4, 2008, EUGENE TELFAIR wrote Check No. 1002 drawn on the CCEDI account payable to ROBERT NIXON in the amount of $60,067.55, including a notation, "consulting" on the memo line of the check.

7.  On or about December 4, 2008, ROBERT NIXON wrote Check No. 1005, drawn on the CCEDI account payable to EUGENE TELFAIR in the amount of $60,067.55, including the notation "Admin." on the memo line of the check.

8.  On or about December 5, 2008, EUGENE TELFAIR caused Check No. 1005 for $60,067.55 to be deposited into his personal Morgan Stanley investment account.

9.  On or about December 9, 2008, EUGENE TELFAIR caused the taxpayer identification number for the CCEDI account to be changed from the taxpayer identification number of FAMU to the taxpayer identification number of FAMU FCU.

10.  On or about December 11, 2008, ROBERT NIXON caused Check No. 1002 to be deposited into his personal FAMU FCU account.

11.  On or about December 15, 2008, ROBERT NIXON obtained a $39,237 cashiers check purchased with funds from ROBERT NIXON's FAMU FCU account to pay a personal debt.

7

12.     On or about April 15, 2009, EUGENE TELFAIR caused to be filed with the Internal Revenue Service a 2008 personal federal income tax return on which he failed to report the $74,187.60 in income he had received from the CCEDI account during the 2008 tax year.

13.     On or about April 15, 2009, ROBERT NIXON caused to be filed with the Internal Revenue Service a 2008 personal federal income tax return on which he failed to report the approximately $60,067.55 in income he had received from the CCEDI account during the 2008 tax year.

14.     In or about 2009, EUGENE TELFAIR created a fraudulent IRS Form 1099 reflecting a payment to EUGENE TELFAIR of $60,067 and listing EUGENE TELFAIR as both payer and payee of this amount.

15.     In or about 2009, EUGENE TELFAIR created a fraudulent IRS Form 1099 reflecting a payment to ROBERT NIXON of $60,067 and listing ROBERT NIXON as both payer and payee of this amount.

16.     On or about July 8, 2009, ROBERT NIXON sent a letter to the Office of the President of FAMU asking approval to engage in outside employment, specifically, providing "consulting services to Mr. Gene Telfair on a micro-loan project he coordinated on behalf of Leon County and the Cross-Town Development Initiative."

17.     On or about August 4, 2009, ROBERT NIXON met with FAMU's Vice President for Audit and Compliance and stated that he was unaware of the existence of any account at FAMU FCU related to the Institute on Urban Policy grant program.

8

All in violation of Title 18, United States Code, Sections 371 and 1349.

## COUNT TWO

The allegations of Sections A and C of Count One of this Indictment are incorporated by reference as if fully set forth herein.

Between in or about June 2008, and in or about December 2008, in the Northern District of Florida, and elsewhere, the defendants,

**EUGENE TELFAIR**
**and**
**ROBERT NIXON,**

being agents of FAMU, an organization and agency of the State of Florida, receiving in the one-year period beginning January 1, 2008, benefits in excess of $10,000 under a federal program involving grants, contracts, subsidies, loans, guarantees, and other forms of Federal assistance, did knowingly embezzle, steal, obtain by fraud, without authority convert to the use of a person other than the rightful owner, and intentionally misapply property that was valued at $5,000 or more and under the care, custody, and control of such organization, agency, and State.

In violation of Title 18, United States Code, Sections 666(a)(1)(A) and 2.

## COUNT THREE

The allegations of Section A of Count One of this Indictment are incorporated by reference as if fully set forth herein.

Between in or about June 2008 and in or about December 2008, in the Northern District of Florida, the defendant,

**EUGENE TELFAIR,**

being an officer and employee of the FAMU FCU, the accounts of which were then

insured by the National Credit Union Administration Board, aided and abetted by

### ROBERT NIXON,

knowingly, willfully and with intent to injure and defraud the FAMU FCU, did embezzle,

abstract, purloin and misapply more than $1,000.00 in moneys, funds and credits which

were intrusted to the care and custody of the FAMU FCU, to wit, approximately

$134,253 in monies within the CCEDI account, in violation of Title 18, United States

Code, Sections 657 and 2.

### FORFEITURE

The allegations contained in Counts One through Three of this Indictment are

hereby realleged and incorporated by reference for the purpose of alleging forfeiture

pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(c),

982(a)(2), and Title 28, United States Code, Section 2461(c).

From their engagement in any or all of the violations alleged in Counts One

through Three of this Indictment, the defendants,

### EUGENE TELFAIR
### and
### ROBERT NIXON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all of the

defendants' right, title and interest in any property, real and personal, constituting, and

derived from, proceeds traceable to such offenses.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

1.     cannot be located upon the exercise of due diligence;

2.     has been transferred, sold to, or deposited with a third party;

3.     has been placed beyond the jurisdiction of this Court;

4.     has been substantially diminished in value; or

5.     has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

REDACTED

FOREPERSON

7/1/2010

DATE

PAMELA C. MARSH
United States Attorney

KAREN RHEW-MILLER
Assistant United States Attorney

11